IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| BRANDON DAVID CUDDIHE, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | Case No. 20-cv-04055-SRB |
| ) | Case No. 17-cr-04091-SRB-1 |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## ORDER

Before the Court is Movant Brandon David Cuddihe's ("Cuddihe") Amended Motion to Vacate and Set Aside Sentence (Doc. #20), filed pursuant to 28 U.S.C. § 2255. Cuddihe asserts that his plea counsel was ineffective in advising him to plead guilty without identifying *Miranda* violations and moving to suppress related statements. After full and careful consideration of the record, Cuddihe's request for relief is DENIED.

### I. FACTUAL BACKGROUND

#### A. Initial Investigation

On December 5, 2016, a police detective ("the Detective") in Sedalia, Missouri, took a complaint from a mother and her ten-year-old daughter ("FV2"). The mother stated that after waking up that morning, she had checked FV2's cell phone and discovered that FV2 had been in contact with a purported young girl named "Hanna Richards" and that FV2 had sent her nude pictures and videos via Facebook Messenger. After reading further into the conversation, the mother additionally learned that another minor female ("FV1"), as well as another friend of FV2, had also been involved in the exchanges. The girls had all spent the night together over the weekend at a sleepover. The Detective proceeded to investigate the report and interviewed FV1.

On January 9, 2017, after securing search warrants, the Detective obtained records for the Facebook accounts registered to "Hanna Richards," FV1, and FV2. Those records revealed that the account holder purporting to be "Hanna Richards" had conversed with over 150 people, many of whom appeared to be minors between the ages of eleven and fifteen. The results also included the nude photos that had been exchanged between "Hanna Richards," FV2, and FV1. The Detective located an additional juvenile from Sedalia ("FV3") who had also sent pictures via Facebook Messenger to the "Hanna Richards" account in December 2016.

The Detective, upon learning that the IP addresses used to log into the "Hanna Richards" account belonged to a Sprint customer, subpoenaed Sprint for the corresponding subscriber information. Records revealed the IP addresses belonged to an individual named Ashley Beach ("Beach") located in Binghamton, New York. The Detective contacted the Binghamton Police Department regarding Beach and eventually learned Beach was in a relationship with Cuddihe. Sprint additionally provided two phone numbers associated with the Sprint customer account, one of which was the same phone number that "Hanna Richards" had provided to FV1 during their conversations on Facebook. The FBI determined this phone number belonged to Cuddihe.

**B. Cuddihe's September 2017 Interview with Law Enforcement**

On September 1, 2017, two Federal Bureau of Investigation agents ("the Agents") appeared unannounced at Cuddihe's home to speak with him about their investigation into the earlier-described events. Except for the Agents, Cuddihe was the only person at the residence. Cuddihe states that he was placed between the two agents at the dining room table with his back against the wall. With one agent on each side and the wall behind him, Cuddihe alleges that "he was not able to easily get up and move freely." (Doc. #20, p. 2.) Additionally, one of the agents sat within two feet of him for the entire forty-five to sixty-minute interview. Cuddihe claims he

2

informed the Agents at least twice that he did not wish to answer guilt-seeking questions, but they continued their questioning. During the interrogation, Cuddihe indicated he wanted to go outside to smoke a cigarette but was told "no," and that he would have to stay where he was until the Agents were done. At some point during the interview, the Agents requested permission to search Cuddihe's cell phone and Cuddihe declined. (Doc. #24, p. 12.)

## II. PROCEDURAL BACKGROUND

In December 2017, Cuddihe was charged by indictment with three counts of attempted production of child pornography, one count of receipt of child pornography, and three counts of transferring obscene materials to a minor. (Crim Doc. #1.)[1] On October 16, 2018, Cuddihe pled guilty pursuant to a plea agreement to two counts of attempted production of child pornography in violation of 18 U.S.C. § 2251(a); the remaining counts were dismissed as part of the plea agreement. (Crim. Doc. #28.) On May 9, 2019, the undersigned sentenced Cuddihe to a 360-month term of imprisonment, with each prison term to be served concurrently, followed by a 360-month term of supervised release. (Crim. Doc. #49.) Cuddihe appealed his sentence on May 21, 2019 (Crim. Doc. #51), and the Eighth Circuit Court of Appeals affirmed his sentence in February 2020. (Crim. Doc. #61.) Cuddihe is currently incarcerated at a medium-security federal correction institution in New York, and his projected release date is July 22, 2043.

On April 13, 2020, Cuddihe filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. #1.) Upon review of the motion and subsequent briefing, the Court appointed counsel to represent Cuddihe. Cuddihe's appointed counsel later sought leave to file an amended motion. Cuddihe claims that his plea counsel was ineffective by

---

[1] "Crim. Doc." refers to the docket entry number in the corresponding criminal case *United States v. Cuddihe*, No. 2:17-cr-04091-SRB-1.

failing to file a motion to suppress certain un-*Mirandized* statements, thus making his imposed sentence violative of the Fifth and Sixth Amendments. The Government ("Respondent") opposes the motion, arguing that Cuddihe waived his ineffective assistance of counsel claim by pleading guilty to the charges. Respondent further argues that Cuddihe fails to meet his burden to prove ineffective assistance of counsel under either prong of *Strickland*.

**III. LEGAL STANDARD**

Pursuant to 28 U.S.C. § 2255, a prisoner may move to vacate, set aside, or correct a sentence alleging "that the sentence was imposed in violation of the Constitution … or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"[2] "In a § 2255 proceeding, the burden of proof with regard to each ground for relief rests upon the petitioner." *Kress v. United States*, 411 F.2d 16, 20 (8th Cir. 1969) (citations omitted).

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). "During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Id.* (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). The U.S. Supreme Court has held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

**A. *Strickland* Standard**

"Under *Strickland*, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must prove both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case." *Cheek v. United States*, 858 F.2d 1330,

---

[2] The Government does not argue that Cuddihe failed to timely file his motion, and the Court finds Cuddihe's motion timely. *See* 28 U.S.C. § 2255(f).

4

1336 (8th Cir. 1988). "Failure to satisfy both prongs is fatal to the claim." *Smith v. Kemna*, 309 F. App'x 68, 72 (8th Cir. 2009) (citing *Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997)) (the court "need not reach the performance prong if [it] determine[s] that the defendant suffered no prejudice from the alleged ineffectiveness").

To satisfy the deficiency prong, the "defendant must show that his attorney failed to exercise the customary skills and diligence that a reasonably competent attorney would exhibit under similar circumstances." *Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir. 1985). In the specific context of alleged deficient performance based on the merits of a suppression motion, the defendant must show that "no competent attorney would think a motion to suppress would have failed." *Premo v. Moore*, 562 U.S. 115, 124 (2011). "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* Put another way, "[t]o show deficient performance, [the movant] must show that counsel made such serious errors as to not be functioning as counsel as guaranteed by the Sixth Amendment." *Burns v. Gammon*, 260 F.3d 892, 897 (8th Cir. 2001) (citation and internal quotation marks omitted).

Regarding the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

### B. *Miranda* Standard[3]

To "protect the Fifth Amendment privilege against self-incrimination, *Miranda* impose[s] on the police an obligation to follow certain procedures in their dealings with the accused." *Moran v. Burbine*, 475 U.S. 412, 420 (1986). Under *Miranda*, an individual must be advised of his right to be free from compulsory self-incrimination and the right to the assistance of an attorney any time the individual is taken into custody for questioning. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). *Miranda* protections are triggered only when an individual "is both in custody and being interrogated." *United States v. Boyd*, 180 F.3d 967, 976 (8th Cir. 1999) (citations omitted).

"Custody occurs either upon formal arrest or under *any other circumstances* where the suspect is deprived of his freedom of action in *any* significant way." *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990) (emphasis in original). "The custody inquiry thus turns on whether, given the totality of the circumstances, a reasonable person would have felt at liberty to . . . terminate the interrogation and cause the agent to leave." *United States v. New*, 491 F.3d 369, 373 (8th Cir. 2007) (citations omitted). "[R]elevant factors to be considered in making a determination of custody include an accused's freedom to leave the scene, and the purpose, place and length of the interrogation." *Griffin*, 922 F.2d at 1348. "Interrogation includes not only express questioning by an officer, but also any words or actions that 'police should know are reasonably likely to elicit an incriminating response from the suspect.'" *United States v. Ochoa-*

---

[3] As noted *infra* Section IV, the Court is not required to determine whether a Fifth Amendment violation occurred because Cuddihe waived his right to raise that particular claim when he pled guilty. However, the Court includes the *Miranda* standard in its analysis because the alleged violation is relevant to the extent it informs whether counsel's performance was deficient under the *Strickland* analysis. For example, the failure to discover a clear *Miranda* violation may indicate that counsel "failed to exercise the customary skills and diligence that a reasonably competent attorney would exhibit under similar circumstances." *Hayes*, 766 F.2d at 1251.

6

*Gonzalez*, 598 F.3d 1033, 1038 (8th Cir. 2010) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).

## IV. DISCUSSION

At the outset, the Court addresses Respondent's first point that Cuddihe's "claim that counsel was ineffective for not filing a motion to suppress is waived." (Doc. #24, pp. 7–8.) If Cuddihe's argument to vacate his sentence was solely premised on the sentence being violative of the Fifth Amendment, Respondent would be correct. The Supreme Court provides that:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Having pled guilty, Cuddihe is now barred from raising an independent claim asserting a "deprivation of constitutional rights," including his *Miranda* rights, "that occurred prior to the entry of the guilty plea." *Id.*

However, Cuddihe's instant claim is that he received ineffective assistance when counsel failed to suppress statements allegedly made in violation of *Miranda*. This claim is governed by *Strickland*. *See United States v. Bertram*, 209 F. Supp. 3d 243, 254 (D.D.C. 2016), *aff'd*, 762 F. App'x 1 (D.C. Cir. 2019) (finding the U.S. Supreme Court's decision in *Hill* "provided specific guidance on how its holding in *Tollett* is to be harmonized with *Strickland*"). In *Hill*, the U.S. Supreme Court declared:

> We hold, therefore, that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, *supra*, and *McMann v. Richardson*, *supra*. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability

7

> that, but for counsel's errors, he would not have pleaded guilty and would
> have insisted on going to trial.

*Hill*, 474 U.S. at 58–59. Therefore, the Court, applying *Strickland*, considers whether Cuddihe's counsel's representation was deficient and, if so, whether the deficient performance prejudiced Cuddihe's case. *See Cheek*, 858 F.2d at 1336.

### A. Whether Counsel's Representation was Deficient

Cuddihe contends he was in custody when the FBI agents interrogated him.[4] Because the Agents failed to administer the admonition required under *Miranda* and his counsel was aware of this omission, Cuddihe argues counsel should have filed a motion to suppress the statements he made during the interrogation. Had counsel done so, Cuddihe claims there is a reasonable likelihood the statements he made to the Agents would have been suppressed. Respondent argues Cuddihe was not in custody during the interview and that when Cuddihe discussed the interview with his counsel, counsel did not believe the encounter was a custodial interrogation.

#### 1. Alleged *Miranda* Violation During September 2017 Interview

Cuddihe analogizes his facts to *U.S. v. Griffin*, an Eighth Circuit case holding a suspect was "in custody" even though he was questioned in his own home and was not formally arrested until after the interview. 922 F.2d at 1355. In *Griffin,* two FBI agents questioned the suspect in his home about a recent bank robbery. *Id.* at 1346. The two agents instructed Griffin to sit at his dining table and questioned him there for two hours. At no point did the two FBI agents draw their weapons, handcuff Griffin, or place him under arrest. *Id.* The Eighth Circuit determined the interrogation was custodial in nature and thus implicated *Miranda*.

---

[4] The parties do not appear to dispute whether the September 1, 2017 interview was an "interrogation" for *Miranda* purposes. (Doc. #20, p. 4 n.1.) Although Respondent contends the encounter was consensual, and that "[Cuddihe] invited [the agents] inside," this is provided to support the argument that Cuddihe was not in custody. (Doc. #24, p. 12.) Therefore, the Court assumes, without deciding so, that Cuddihe was interrogated and the only issue pertaining to the *Miranda* analysis is whether Cuddihe was in custody.

In outlining several factors to consider when making a custody determination, the Court emphasized that Griffin was not informed of his *Miranda* rights, was never told that he was not under arrest, and was not told he could ask the agents to leave at any time. *Id.* Twice during the interrogation, Griffin had asked to fetch cigarettes from a different part of the house and both times the agents allowed the break, but escorted him so that he would never be out of an agent's eyesight. *Id.* The Eighth Circuit ultimately determined that "[t]he level of police domination of his home, the restrictions on his actions during questioning, together with the fact that the agents never informed Griffin that he would not be arrested, reflect[ed] a pattern of conduct on the part of the officers that any reasonable person would associate with formal arrest." *Id.* at 1355.

There are some similarities between Cuddihe's alleged facts and *Griffin*. Both men were approached by two FBI agents at their homes and questioned in the dining room with no one else present. Additionally, neither suspect was permitted to fetch cigarettes without supervision, if at all, and neither suspect was informed that he was not under arrest at the time of the interview. The parties here agree that Cuddihe was questioned, alone, in his home by two FBI agents, and that he was never *Mirandized* or informed that he was not under arrest. It is the more nuanced aspects of this encounter that are disputed, and for good reason: the disputed details combine to create the "totality of the circumstances" under which a reasonable person would—or would not—have felt at liberty to "terminate the interrogation and cause the agent[s] to leave." *New*, 491 F.3d at 373. Respondent anticipates the Agents, if called to testify, would deny that Cuddihe was "physically enclosed by the agents" and instead would describe the environment as "open to free movement." (Doc. #24, p. 12.) Furthermore, while Respondent concedes Cuddihe was not informed that he was not under arrest, the Agents claim Cuddihe was outside when they arrived and that he invited them inside and freely agreed to speak.

9

Case 2:20-cv-04055-SRB   Document 28   Filed 05/17/21   Page 9 of 14

The Court is not required to reach a conclusion regarding what transpired on September 1, 2017, however, because Cuddihe abandoned his right to contest this alleged *Miranda* violation when he pled guilty. Rather, the Court's role, in determining whether Cuddihe's counsel was ineffective, is to "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. While the record may be unclear as to whether a Fifth Amendment violation occurred, the Court finds it has sufficient information to resolve Cuddihe's ineffective assistance of counsel claim.

### 2. Plea Counsel's Determination That No *Miranda* Violation Occurred

In a supplemental affidavit submitted by Respondent, Cuddihe's plea counsel confirms that he discussed the September 1, 2017, interview with Cuddihe. Based on what Cuddihe told him, counsel "did not view it to be a custodial interrogation" and he "believed the court would hold the interview as voluntary and the statements would be admissible." (Doc. #24-2, p. 1.) This determination was due, in part, because Cuddihe told his counsel that he had let the agents inside his home voluntarily and agreed to speak with them. Given that Cuddihe specifically asked for counsel's opinion concerning the legality of the Agents' interview prior to accepting a plea agreement, the Court believes Cuddihe had every reason to be just as forthcoming with the same facts he alleges now.[5]

Upon review of the record, the Court finds that Cuddihe's plea counsel did not ignore the possibility of a *Miranda* violation. Instead, after considering the facts disclosed to him, counsel

---

[5] In his affidavit, counsel's recollection includes details that Cuddihe mentions in the instant motion. For example, counsel recounts, "I recall my client explaining the interview by the agents early on in our discussion of the evidence. He told me he let the agents in voluntarily and would speak with them. As to the positioning of the agents described in detail in [the Motion], I do not recall my client ever providing that type of detail as to the setup of the interview nor being able to get [sic] up and move freely. I only recall him stating something to the effect of it 'being at the kitchen table.' . . . He further described an episode involving wanting to smoke a cigarette, although I do not recall what he told me in detail as it was very brief. My client asked my opinion as to the legality of the interview and my position at the time as I

10

made a deliberate and informed choice not to pursue this particular suppression issue. As noted in *Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]

466 U.S. at 689 (internal citations omitted); *see also Ford v. United States,* 917 F.3d 1015, 1022 (8th Cir. 2019) ("Reasonable professional judgment is not infallible. Failure to discover a particular piece of marginally helpful information does not render legal representation constitutionally deficient."). Moreover, the Court is mindful of the fact that Cuddihe entered a guilty plea. Under *Premo*, the U.S. Supreme Court held:

> Acknowledging guilt and accepting responsibility by an early plea respond to certain basic premises in the law and its function. Those principles are eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place. Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks.

562 U.S. at 124.

Here, the Court refrains from "reconstruct[ing] the circumstances of counsel's challenged conduct" and instead carefully "evaluate[s] the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Counsel was told about the Agents' interview early in the case and

---

explained to my client was that I did not view it to be a custodial interrogation since he agreed to speak with the agents and let them into his residence." (Doc. #24-2, p. 1.) Due to the overlapping details, counsel appears to have been sufficiently aware of the situation according to the facts Cuddihe provided to him at that time.

knew Cuddihe was not given *Miranda* warnings. Considering the information Cuddihe provided at that time, counsel made a judgment call[6] and the Court finds his conduct "falls within the wide range of reasonable professional assistance." *Id.* Therefore, because a competent attorney could have thought that the motion to suppress Cuddihe's statements would have failed, the Court finds counsel's performance was not deficient. *See Premo*, 562 U.S. at 124.

Consequently, the Court, having found counsel's performance was not deficient, need not address the argument regarding prejudice. "Failure to satisfy both prongs is fatal" to a *Strickland* claim and Cuddihe's claim fails on the deficient performance prong. *Kemna*, 309 F. App'x at 72; *Strickland*, 466 U.S. at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."); *Ford*, 917 F.3d at 1021 ("Because the defendant must satisfy both prongs of the *Strickland* test to succeed on an ineffective-assistance claim, a court may decide such a claim by addressing either prong."). The Court, having determined that plea counsel's performance was not deficient, denies Cuddihe's motion to vacate his sentence.

### B. Need For an Evidentiary Hearing

"A Section 2255 movant is entitled to an evidentiary hearing . . . unless the motion, files, and record conclusively show that he is not entitled to relief." *Koskela v. United States*, 235 F.3d 1148, 1149 (8th Cir. 2001). "A § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the

---

[6] "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. There are no facts indicating that counsel further investigated whether or not the interview constituted a *Miranda* violation. However, counsel decided that a motion to suppress would be futile because he believed, based on Cuddihe's representations, that Cuddihe voluntarily met with the Agents, making further investigation unnecessary.

12

allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Ford*, 917 F.3d at 1025–26 (quoting *United States v. Regenos*, 405 F.3d 691, 694 (8th Cir. 2005)).

The Court, upon review of the record, finds that an evidentiary hearing is not needed to make its determination. Even if Cuddihe's allegations are accepted as true, he would still not be entitled to relief on his ineffective assistance claim. While Cuddihe's and Respondent's accounts of the September 2017 interview differ in some respects, the crucial facts are undisputed. In an affidavit provided by Respondent, Cuddihe's former counsel confirms that he and Cuddihe spoke about the September 2017 interview and he explains why he reached the conclusion not to file a motion to suppress. (Doc. #24-2.) The overlapping details between plea counsel's recollection of the facts—as provided to him by Cuddihe at that time—and Cuddihe's allegations as set forth in the parties' briefs indicate that plea counsel had sufficient information to make a professional determination whether a motion to suppress would have been successful. There are no disputed facts identified by Cuddihe that necessitate live testimony, nor does he identify an issue where additional factual development would establish that he is entitled to the relief he seeks.

Because the Court can conclusively determine from the extensive record that Cuddihe is not entitled to the relief on his *Strickland* claim, the Court thus declines to conduct an evidentiary hearing. *See, e.g.*, *Walker v. United States*, 810 F.3d 568, 580 (8th Cir. 2016) (affirming district court's denial of an evidentiary hearing where the record conclusively showed no entitlement to relief on the ineffective assistance claims); *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1106 (8th Cir. 2011) (affirming the district court's denial of an evidentiary hearing where "[e]ven if true, petitioner's allegations would not entitle him to relief because he cannot prove *Strickland* prejudice); *cf. United States v. Pressley*, 990 F.3d 383, 389 (4th Cir. 2021) (remanding case for

13

an evidentiary hearing where the record did not clearly show whether it was an objectively reasonable choice for counsel not to file a suppression motion and counsel did not "submit an affidavit to the district court outlining his decision-making process"). In turn, Cuddihe's petition to vacate his sentence is denied.

## V. CERTIFICATE OF APPEALABILITY

To receive a certificate of appealability, a movant must demonstrate a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons stated herein, the Court does not find Cuddihe's Sixth Amendment claim debatable among reasonable jurists. Cuddihe's request for a certificate of appealability is therefore denied.

## VI. CONCLUSION

Accordingly, it is **ORDERED** that Petitioner Cuddihe's amended motion to vacate and set aside his sentence pursuant to 28 U.S.C. § 2255 (Doc. #20) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
DATE: May 17, 2021　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE